IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JONASENA IRBY,

                Plaintiff,

vs.                                Case No. 12-1412-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On August 18, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 13-24). Plaintiff alleges that she has been disabled since May 15, 2009 (R. at 13). Plaintiff is insured for disability insurance benefits through December

4

31, 2013 (R. at 15). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 15). At step two, the ALJ found that plaintiff has the following severe impairments: bipolar I disorder; schizophrenia, paranoid type; and alcohol dependence (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 18), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 23). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23-24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III. Did the ALJ err in his evaluation of the evidence pertaining to plaintiff's mental impairments, including the weight given to the opinions of Dr. Wallace a treatment provider, and by failing to consider work reports from plaintiff's former employers?**

This case centers on the severity of plaintiff's mental impairments. Dr. Wallace, plaintiff's treating psychiatrist, summarized a very detailed psychiatric evaluation dated December 14, 2010 (R. at 442-449) by stating the following:

5

> Ms. Jonasena Irby is a 33-year old…who has a history of bipolar symptoms of mania and depression. Since age 18, she has been hospitalized three or four times…Ms. Irby has a history of not being able to sustain employment. Within the past five years, her longest held position was at CCL. During this time she was working on third shift. During this time, she was hospitalized at Osawatomie State Hospital for a mania episode. Upon her return, after being stabilized, she was unable to sustain this job. She struggles socially with making connections with people and is hesitant to trust anyone. She also struggles with the ability to focus and her memory. Even when she took a job during the holiday season at JcPenney's as a stocker, she found the job difficult to understand. Due to Ms. Irby's ongoing depressive symptoms, she often lacks motivation, experiences a low mood, and often feels indecisive, which leads to her frequently being late to work or calling in sick.
>
> Ms. Irby's ongoing bipolar symptoms of mania, depression, inability to connect with others, difficulties with memory and focus prevent her from being able to maintain gainful employment. Ms. Irby is clearly disabled and unable to work.

(R. at 449).

On February 25, 2011, Dr. Wallace prepared a mental RFC assessment for the plaintiff, finding that she was markedly impaired in 10 of 20 categories (R. at 451-453). He stated that she has proven she cannot sustain employment despite efforts to do so (R. at 452). The ALJ gave little weight to these opinions because, according to the ALJ, they were not consistent with the

6

treatment notes, plaintiff's own reports, and has no support from other evidence in the record (R. at 22).

On July 14, 2011, Dr. Wallace stated the following:

> Ms. Irby was released from Larned State Hospital on 6/24/11…Despite the intensive services that have been working with Ms. Irby and intensive medication management, she continues to be symptomatic with such symptoms of mania, delusion, disorganized thoughts, insomnia, and agitation.
>
> Ms. Irby is clearly disabled and unable to work.

(R. at 531). On March 20, 2012, Dr. Wallace stated the following:[2]

> Ms. Irby has received services from Cowley County Mental Health from June 2009 until the present…
>
> Since June 2009, Ms. Irby has had two psychiatric hospitalizations. The first hospitalization was from June 17, 2009 to June 24, 2009 at Osawatomie State Hospital. Upon her return from that hospitalization, she was still highly manic. The second hospitalization was from May 11, 2011 to June 26, 2011 at Larned State Hospital. Again she returned highly manic and delusional. Per Ms. Irby's report she has had 4 to 5 psychiatric hospitalizations since age 18.[3]
>
> Even with medication, Ms. Irby continues to struggle with mental illness symptoms that affect her ability to function daily and to maintain employment. She has attempted to

---

[2] This letter was written after the ALJ decision of August 18, 2011, but is referenced because it discusses her treatment, hospitalizations and employment history before that date.
[3] The record includes inpatient hospital records from Eastern State Hospital in Oklahoma which indicate that plaintiff was hospitalized from April 4, 1997 to June 27, 1997 (R. at 487-496). Plaintiff reported other hospitalizations in 2002 and 2004 to Dr. Wallace (R. at 446).

7

> work, but her longest employment stint was
> approximately 3 to 4 years ago. Her
> employer at that time was CCI and this job
> lasted one year. Her most recent job was
> working at a nursing home in 2011. She was
> eventually let go after frequent tardiness
> and missed work days….
>
> It is just a matter of time that Ms. Irby is
> hospitalized once again. Ms. Irby is
> clearly disabled and unable to work in any
> capacity that would be sustained. Her
> inability and disability are solely the
> result of her chronic mental illness.

(R. at 536-537).

The ALJ gave little weight to the opinions of Dr. Wallace dated December 14, 2010 and July 14, 2011 because: (1) the determination of whether a claimant can work is a decision reserved to the Commissioner, (2) a record from July 1, 2011 stated that Dr. Wallace had not seen plaintiff since March 28, 2011[4] and stated he had no information on her, and (3) his opinions lack support from treatment notes or objective findings and are not consistent with the other information of record (R. at 22).

The ALJ gave "significant" weight to the opinions of Dr. Kresser and Dr. Jessop, who did not see or evaluate plaintiff, but examined the record (R. at 21-22, 406-420, 441). Dr.

---

[4] The treatment note of July 1, 2011 actually states that Dr. Wallace saw the plaintiff on July 1, 2011 for 30 minutes that day, and further noted that she had last been seen on March 28, 2011. It noted that she had been hospitalized at Larned for about a month (May 11, 2011 to June 26, 2011), which would clearly account for Dr. Wallace not seeing her during that time. The note then states that "I have absolutely no information on her," and referenced her medications (R. at 533). It would appear that Dr. Wallace was indicating that he had no information regarding her recent hospitalization at Larned, including what her medications were.

8

Kresser signed the assessment on November 13, 2009 (R. at 409-410), and Dr. Jessop affirmed the assessment on March 22, 2010 (R. at 441). Thus, this assessment by medical sources predated her six week hospitalization at Larned State Hospital.[5]

A key factor in discounting the opinions of Dr. Wallace that she had marked impairments and was unable to work (in which Dr. Wallace took into account her work history), was the ALJ's assertion that the opinions of Dr. Wallace were not supported by the record. The record includes reports from former employers, which will be carefully examined.

The first report was from CCL. Plaintiff was employed there from June 23, 2008 through August 10, 2009. Plaintiff worked as a direct support professional, providing direct care to individuals with developmental disabilities. It noted that plaintiff was terminated for no call/no show. It noted she failed to check in, and slept on duty, and that she failed to follow supervisor instructions. She required a lot of supervision on her last day of work. She was unable to care for her own caseload of clients without asking for help; she could not take care of her clients by herself. She had trouble getting along with co-workers and supervisors (R. at 317-319).

---

[5] When this case is remanded, the ALJ should take into account the fact that the medical record obviously underwent material changes in the 21 months between the report by Dr. Kresser (November 13, 2009) and the ALJ decision (August 18, 2011). The report does not account for material objective evidence that developed after this report, including a 6 week in-patient psychiatric hospitalization. As noted in Chapo v. Astrue, 682 F.3d 1285, 1292-1293 (10th Cir. 2012), an ALJ's reliance on a patently stale opinion is troubling.

The second report was from JC Penneys. She worked there from October 15, 2009 through January 11, 2010. Plaintiff had difficulty with retaining information. She had to be retrained every day, and would still have trouble keeping up. She had problems performing her duties in a timely and satisfactory manner. Supervisors had to "stick" with her to make sure she performed duties adequately. Although concentration was adequate, speed was an issue. Plaintiff never seemed to be able to catch on to her job duties. Plaintiff could not learn new tasks within an acceptable time frame. Because she could not keep up with the fast pace, her hours were reduced. The employer would not rehire this person (R. at 321-323).

The records from Larned State Hospital also contain information regarding plaintiff's employment at Good Samaritan Society in 2010. She apparently worked there from July-December 2010. It noted that she was terminated when she called in after 9 absences and 19 tardies (R. at 529-530).

The ALJ made no mention or reference to the evidence pertaining to plaintiff's work history, as set forth above. In Blea v. Barnhart, 466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and

severity of her husband's impairments. The court held as follows:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." Adams, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision." Adams, 93 F.3d at 715. Additionally, Mrs. Blea's testimony regarding her husband's suicidal thoughts is not only uncontroverted; it serves to corroborate Dr. Padilla's psychiatric examination of Mr. Blea, where he stated that Mr. Blea has been dysthymic for years. [citation to record omitted] Thus, the ALJ's refusal to discuss why he rejected her testimony violates our court's precedent, and requires remand for the ALJ to incorporate Mrs. Blea's testimony into his decision. "Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion[s] ... [are] supported by substantial evidence." Threet, 353 F.3d at 1190; see also Baker v. Bowen, 886 F.2d 289, 291 (10th Cir.1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

Blea, 466 F.3d at 915.

According to Blea, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony. Defendant concedes, as was the case in Blea, that the ALJ did not mention either statement in her decision (Doc. 18 at 14). Thus, it is not at all clear that the ALJ considered the statements of her former employers when making his decision.

As set forth above, Dr. Wallace noted the problems associated with plaintiff's work history in support of his opinion that plaintiff was clearly disabled and unable to work because of her mental impairments. Thus, as in Blea, the statements from her former employers are uncontroverted and serve to corroborate the statements and opinions of Dr. Wallace. Without the benefit of the ALJ's findings supported by the weighing of this highly relevant evidence, the court cannot determine whether the ALJ's conclusions are supported by substantial evidence. Therefore, this case shall be remanded in order for the ALJ to examine the statements from her former employers, and reexamine the opinions of Dr. Wallace in light of these statements.

Other findings of the ALJ are also questionable and need to be reexamined when this case is remanded. The ALJ found that plaintiff had no episodes of decompensation, which have been of extended duration. The ALJ then stated:

> The claimant does not have a history of
> psychiatric hospitalizations and she has not
> alleged any episodes of decompensation due
> to psychiatric issues.

(R. at 18).

First, the report from Dr. Kresser found that plaintiff had one or two repeated episodes of decompensation, each of extended duration (R. at 418). Despite giving "substantial" weight to her opinions, the ALJ did not mention Dr. Kresser's opinion on this subject, and gave no reason for discounting it in his opinion.

Second, the ALJ stated that plaintiff "does not have a history of psychiatric hospitalizations" (R. at 18). However, the record clearly establishes that plaintiff was hospitalized for nearly 3 months in 1997 at Eastern State Hospital in Oklahoma for a psychiatric disorder (R. at 488-497), she had a 1 week psychiatric hospitalization at Osawatomie in 2009, and she had a 6 week psychiatric hospitalization at Larned in 2011 (R. at 536).[6] Plaintiff was admitted to Osawatomie by emergency court order due to manic episode; plaintiff had not slept for 1 week (R. at 359). Plaintiff was admitted to Larned when she had not slept for 4 days, was bordering on manic, very irritated, agitated, impulsive, with racing thoughts. Plaintiff stated she knows she is out of control (R. at 513). Plaintiff reported

---

[6] The psychiatric hospitalizations at Osawatomie and Larned both took place after her alleged onset of disability.

other psychiatric hospitalizations to Dr. Wallace as well (R. at 446, 449).[7]

This statement by the ALJ in light of the clear evidence otherwise raises serious questions about whether the ALJ carefully examined all the evidence before reaching his decision. On remand, the ALJ must examine all the evidence relating to plaintiff's psychiatric hospitalizations, and consider them in conjunction with the reports and opinions of Dr. Wallace and statements from her former employers.

**IV. Did the ALJ err in finding that plaintiff's impairments did not meet or equal listed impairment 12.04?**

The ALJ found that plaintiff's impairments do not meet or equal listed impairment 12.04 (R. at 17). Plaintiff asserts that substantial evidence does not support this finding. The court will not address this issue because it may be affected by the ALJ's resolution of the case on remand after examining the statements from former employers, reevaluating the statements and opinions of Dr. Wallace, and examining all the evidence relating to plaintiff's numerous psychiatric hospitalizations. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

---

[7] Later in his opinion, the ALJ mentioned that plaintiff "presented" to Osawatomie State Hospital and Larned State Hospital (R. at 19). The ALJ did not mention that she was hospitalized at those psychiatric facilities for 1 and 6 weeks, respectively. The ALJ never mentioned her history of other psychiatric hospitalizations, including a nearly 3 month psychiatric hospitalization in 1997. The court cannot understand how the ALJ could state that plaintiff "does not have a history of psychiatric hospitalizations" in light of the ALJ's own acknowledgement that she had been admitted to these two state psychiatric hospitals.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 18th day of February 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge